UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINO MORALES, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAMELBAK PRODUCTS, LLC; VISTA OUTDOORS, INC.; and DOES 1 through 50 inclusive,<br><br>Defendants. | Case No. 2:18-cv-09457-AB (JCx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND** |

Plaintiff Regino Morales ("Plaintiff") filed a Complaint in Los Angeles County Superior Court on September 17, 2018. ("Complaint," Dkt. No. 1-1.) The Complaint alleges that Defendants Camelbak Products, LLC and Vista Outdoors, Inc. (collectively, "Defendants") violated various California labor laws. *Id*. On November 7, 2018, Defendants removed the case to this Court. *See* Notice of Removal ("NOR," Dkt. No. 1). On December 6, 2018, Plaintiff filed a Motion to Remand. ("Motion," Dkt. No. 14.)[1] Defendants filed an Opposition, and Plaintiff filed a Reply. (Dkt. Nos.

---

[1] It appears that Plaintiff's meet-and-confer efforts did not satisfy Local Rule 7-3 because he did not raise with Defendants the amount in controversy as the basis of the motion. The Court will nevertheless decide the motion on the merits because the issue is jurisdictional.

1

16, 17.) On February 6, 2019, the Court took the Motion under submission. For the following reasons, the Court **GRANTS** Plaintiff's Motion.

## I. BACKGROUND

Plaintiff was employed by Defendants as a non-exempt employee. Compl. ¶ 2. According to Plaintiff, Defendants "have had a consistent policy of failing to pay wages, including minimum and overtime wages, to Plaintiff and other non-exempt employees in the State of California." *Id.* Plaintiff similarly alleges that "Defendants have had a consistent policy of failing to provide Plaintiff and other similarly situated employees or former employees within the State of California" uninterrupted meal and rest periods, compensation for unprovided meal and rest periods, wages owed to them upon termination or resignation, and accurate wage statements. *Id.* ¶¶ 17, 19, 20, 21.

Based on these allegations, Plaintiff filed his Complaint in Los Angeles County Superior Court on September 17, 2018. *Id.* at 1. The Complaint asserts seven causes of action: (1) Failure to Pay Overtime Wages; (2) Failure to Pay Minimum Wages; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Periods; (5) Failure to Pay Due Wages at Termination; (6) Failure to Provide Accurate Wage Statements; and (7) Unfair Competition under California Business and Professions Code section 17200. Compl. at 1. Plaintiff brings these claims on behalf of a putative class. *Id.* ¶ 1. The Complaint defines the "Non-Exempt Employee Class" as "[a]ll current or former employees of Defendants within the State of California at any time commencing four years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class." *Id.* ¶ 22. Plaintiff and the members of the Non-Exempt Employee Class allege the first and second cause of action. *Id.* The "Meal Period Class" and "Rest Period Class" is similarly composed of "[a]ll current and former employees of Defendants" who qualified for a meal or rest period and allege the third and fourth causes of action. *Id.* The "Late Pay Class" asserts the fifth cause of action, and the "Wage Statement Class" asserts the sixth

cause of action. *Id.*

## II. LEGAL STANDARD

A defendant may remove a civil action filed in state court to federal court when the federal district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). "A suit may be removed to federal court under 28 U.S.C. § 1441(a) only if it could have been brought there originally." *Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987).

Pursuant to the Class Action Fairness Act ("CAFA"), federal district courts have original jurisdiction over certain class actions. 28 U.S.C. § 1332(d)(2). In order to remove a case under CAFA, the defendant must establish that (1) the parties are minimally diverse, (2) the proposed class has more than 100 members, and (3) the total amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020–21 (9th Cir. 2007).

## III. DISCUSSION

Plaintiff argues that this action should be remanded to Los Angeles County Superior Court. Plaintiff claims Defendants have not carried their burden of proving the requisite amount in controversy by a preponderance of the evidence.

### A. CAFA Requirements

As noted above, CAFA jurisdiction requires minimal diversity, a class of over 100 members, and an aggregate amount in controversy over $5 million. *Serrano*, 478 F.3d at 1020–21. The parties do not dispute that Plaintiff's class is larger than 100 members and that the parties are minimally diverse.[2] Thus, the Court must determine only whether Defendants have satisfied the amount in controversy requirement.

### B. Defendants Do Not Establish By a Preponderance of The Evidence That The Amount in Controversy Exceeds $5,000,000.

In assessing the amount in controversy, courts first look to the allegations in the

---

[2] The class size is 210 (NOR, at p. 8), and Vista has Utah citizenship (Larson Decl. ¶3), which is diverse from Plaintiff.

3

complaint. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Courts can accept a plaintiff's good faith allegation of the amount in controversy. *Id*. But if the "plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." 28 U.S.C. § 1446(c)(2)(A); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551 (2014). "[N]o antiremoval presumption attends cases invoking CAFA." *Dart Cherokee*, 135 S. Ct. at 554 (2014). "[T]he defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million." *Id*. The parties then "may submit . . . summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra,* 775 F.3d at 1197 (citing *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)) (internal quotation marks omitted). "[W]hen the defendant's assertion of the amount in controversy is challenged by plaintiffs in a motion to remand, the Supreme Court has said that both sides submit proof and the court then decides where the preponderance lies." *Ibarra*, 775 F.3d at 1198.

Here, the Complaint does not state an aggregate amount in controversy for the putative class. (Dkt. No. 1-1.) With their NOR, Defendants submitted a declaration from Stuart Larson, Vice President of Human Resources for Vista Outdoor, Inc., that they claim demonstrates that the amount in controversy does exceed $5 million. *See* Decl. Stuart Larson (Dkt. No. 1-5). In opposing the Motion, Defendants filed no additional evidence but instead rely solely on the Larson Declaration. *See* Opp'n (Dkt. No. 16). The only adjustments Defendants made to its calculations were to some of its assumptions. According to Defendants, the declaration shows that Plaintiff's allegations place at least $6,459,188.50 in controversy. Defendants break down their calculations as follows:

| Claim | Amount in Controversy[3] |
|---|---|
| Unpaid Overtime and Minimum Wages | $899,746.76 |
| Unpaid Meal Period Premiums | $1,767,101.82 |
| Unpaid Rest Break Premiums | $1,767,101.82 |
| Waiting Time Penalties | $327,650.40 |
| Inaccurate Wage Statements | $405,750.00 |
| Attorneys' Fees | $1,291,837.70* |
| Total | $6,459,188.50 |

*See* Opp'n, at pp. 10-15; NOR, at p. 8-11.

### 1. Defendants' Calculations For Several Claims Are Not Limited to the Number of Members in the Respective Sub-Classes, So These Amounts Are Unsupportable.

Plaintiff takes issue with multiple aspects of these calculations, but the critical deficiency Plaintiff identifies is Defendants' inclusion of all non-exempt employees in each subclass in determining the amount in controversy. Plaintiff's first cause of action for Failure to Pay Overtime Wages seeks penalties for Plaintiff and members of the Non-Exempt Employee Class who worked "in excess of eight hours per day and/or forty hours per week," but Defendants did not limit their calculations to employees within this narrower scope. Instead, they included all non-exempt employees during the relevant four-year period in their calculations. *See* Larson Decl. ¶ 3 ("At the time of removal, I had such filters and searches performed for Defendants' nonexempt employees in California from 9/18/2014 to 9/17/2018").

Similarly, Plaintiff's third cause of action narrows the Meal Period Class to

---

[3] Some of Defendants' calculations have errors because sometimes they used 27,182 workweeks instead of 27,676 workweeks, as stated in Stuart Larson's Declaration. However, the difference is immaterial because, as discussed below, the calculations are otherwise based on unreasonable assumptions that render the entire calculation unreasonable.

5

"those who worked shifts of five (5) hours or more," and Plaintiff's fourth cause of action narrows the Rest Period Class to those who "worked shifts of four (4) hours or more." Compl. ¶ 22. Again, however, Defendants did not limit their calculations to employees who qualified for the rest and meal periods, but included all non-exempt employees, regardless of their shifts, during the relevant four-year period. *See* Larson Decl. ¶ 3.

Defendants' inclusion of all 210 non-exempt employees—rather than those who belong to the relevant subclasses—prevents the Court from adopting their unpaid overtime, meal period, and rest period calculations. Defendants have not demonstrated that they attempted to limit their calculations to employees within the defined subclasses. If Defendants could not have filtered or searched the data of non-exempt employees, then they should have provided evidence to that effect. Instead, the sole piece of evidence on which Defendants' rely, Stuart Larson's declaration, does not mention distinctions among non-exempt employees. The only evidence before the Court therefore reveals no effort by Defendants to adhere to the Complaint's class definitions, even after it was directly challenged by Plaintiff in the Motion for Remand.

By including employees who are not putative class members, Defendants calculated the amount in controversy for several claims using broader sub-class definitions than those that Plaintiff asserts. In doing so, Defendants likely inflated the amount in controversy. *See Miller v. A-1 Express Delivery Servs., Inc.*, 2017 WL 462406, at *5 (N.D. Cal. Feb. 3, 2017) (remanding a case due to the defendant's failure to establish the amount in controversy where the defendant "based its amount in controversy calculations on an incorrect class definition"). Because Defendants have not provided any evidence about what portion of their non-exempt employees worked in excess of eight hours per day or qualified for meal and rest periods, the Court has no way to discern the extent to which Defendants overstated the amount in controversy for these claims. Thus, "[t]he uncertainty regarding the number of

putative class members affects the entirety of the amount in controversy calculations." *Id.* These three claims—for unpaid overtime and unpaid meal period and rest period premiums—account for more than $4.3 million of Defendants' $6.4 million amount in controversy. Because the calculations for these claims are unsupportable, the Defendants' have not established by a preponderance of the evidence that the amount in controversy exceeds $5 million.

### 2. Defendants' Calculations Are Based On Unreasonable Assumptions of Violation Rates.

Defendants first assume that all non-exempt employees worked an hour and fifteen minutes of unpaid overtime per week due to rounding. *See* NOR, at p. 1. Defendants then reduced the violation to one hour per week and provided evidentiary support to ground this assumption. *See* Opp'n, at p. 10-11. District courts have held that one hour of overtime per week was reasonable given allegations of "consistent" failure to pay overtime. *See Hull v. Mars Petcare US, Inc.*, 2018 WL 3583051, at *4 (C.D. Cal. July 25, 2018) (assumption of one-hour-a-week violation was reasonable); *Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at *7 (C.D. Cal. May 9, 2011) (assumption of one hour of overtime reasonable given allegation of "consistent" failure to pay overtime); *Jimenez v. Allstate Ins. Co.*, 2011 WL 65764, at *3 (C.D. Cal. Jan. 7, 2011) (assumption of one hour of unpaid overtime per week based on "consistent" overtime work); *see also Reyes v. Carehouse Healthcare Ctr. LLC*, 2017 WL 2869499, at *3-4 (C.D. Cal. July 5, 2017) (assumption of one hour of overtime appropriate given allegation of "regular" violation). The Court finds this assumption of one hour of overtime per week reasonable and persuasive.

When they first removed the case, Defendants assumed a 100% violation rate of five missed meal periods per week, and five missed rest periods per week for all non-exempt employees and all relevant workweeks. *See* NOR, at p. 8-9. In opposition to this motion, Defendants argued that assuming a 100% violation rate is appropriate, but nevertheless offered a calculation based on a reduced violation rate of 60%, which is

three missed meal periods and three missed rest periods per 5-day work week. *See* Opp'n at 11. Defendants reduced the violation rate from 100% to 60%, but that is still a high number, as it means employees missed meal and rest breaks significantly more often than they received them. Regardless, Defendants do not justify how either rate can be assumed from a "consistent policy" as alleged in Plaintiff's Complaint. *See Roth v. Comerica*, 799 F. Supp. 2d 1107, 1125 (C.D. Cal. 2010) (rejecting defendants' calculation because they "proffered no evidence demonstrating that it is more likely that class members missed meal and rest periods three times a week than that they missed them three times a month").

District courts have varied on what assumptions of violation rates are reasonable. *See Vasserman v. Henry Mayo Newhall Mem. Hosp.*, 65 F. Supp. 3d 932, 980-81 (C.D. Cal. 2014) (discussing that certain district courts disagree as to whether defendants may assume certain variables, many refuse calculations based on variables not clearly suggested by the complaint or supported by evidence, and others have relied on calculations without a clear basis). Defendants have also cited to courts assuming a range of violation rates for meal and rest periods. *Compare Bryant v. NCR Corp.*, 284 F. Supp. 2d 1147, 1151 (S.D. Cal. 2018) (found assumption of three missed breaks per week proper where complaint provided no guidance on violation rate) *with Sanchez v. Capital Contractors*, 2014 WL 4773961, at *3 (N.D. Cal. Sept. 22, 2014) (allegations of "systematic," "regular," and "consistent" violations supported assumption of one missed meal break and one missed rest break for each week as reasonable). Defendants argue that they can assume a 100% or 60% violation rate to calculate exposure under CAFA because the Complaint proffers no detail as to the frequency of the failure to provide meal and rest periods. *See* Opp'n at 8-10. However, Defendants cannot "improperly shift the burden to plaintiff to refute speculative assertion of jurisdiction and establish that there is no jurisdiction" when Defendants are exclusively in possession of information that can calculate violation rates. *Vasserman*, 65 F. Supp. 3d at 982.

1         "[A] damages assessment may require a chain of reasoning that includes assumptions," but those assumptions must be reasonable. *Ibarra*, 775 F.3d at 1199. While it is true that the Complaint's language only refers to a "consistent policy" of unlawful activity, the burden remains on Defendants to prove "that its estimated amount in controversy relied on reasonable assumptions." *Id.* at 1197. Defendants' calculations applying a 60% violation rate of the unpaid meal and rest periods, the two most significant claims, find no evidentiary support in the record. *See Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) (finding assumption of one violation per week reasonable based on the allegations of "regularly and consistently fail[ing] to provide uninterrupted meal and rest periods"). The Court would have to rely on "speculation and conjecture" to adopt Defendants' calculations. *Ibarra*, 775 F.3d at 1197. It cannot do so.

        Plaintiff's fifth cause of action for Failure To Pay Due Wages At Termination rely on "the wages owed to them as a consequence of overtime wages, minimum wages, and meal and rest period violations." Compl. ¶ 59. Plaintiff's sixth cause of action for Failure To Provide Accurate Wage Statements relies on, "among other things, pay due and owing for meal and rest break law violations and hours worked that were not paid." Compl. ¶ 59. Finally, Defendants' estimates for Plaintiff's attorneys' fees are calculated to be 25 percent of the aggregate amount in controversy, so it is, in turn, based on assumptions that are unsupported and speculative. *See Rodriguez v. US Bank Nat'l. Ass'n.*, 2016 WL 5419403, at *7 (C.D. Cal. Sept. 26, 2016) (concluding "that defendant's estimate of attorneys' fees is too indefinite to be credible").

        In sum, Defendants' damages calculation is not reasonable. Essentially all of Defendants' calculations are inflated because they depend on the entire class of employees and are not tailored to the number of employees in the applicable subclass for each claim. *See* NOR, at pp. 8-10. Two of Defendants' largest calculations, based on the failure to pay rest break and meal period premiums, utilize high violation rate

assumptions without reasonable ground. Finally, the attorneys' fee calculation derives from these unreasonable calculations and is therefore itself unreasonable. The Court therefore cannot rely on any of those calculations, and Defendants have failed to carry their burden of establishing that the amount in controversy exceeds $5 million. Accordingly, CAFA does not establish subject matter jurisdiction over this case.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Remand. The matter is remanded to Los Angeles County Superior Court.

**IT IS SO ORDERED.**

Dated: March 19, 2019

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE